UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------X
UNITED STATES OF AMERICA,

      -against-                MEMORANDUM & ORDER
                                     10-CR-0696-2(JS)(ARL)
JASON BLAIR,

                    Defendant.
---------------------------------X
APPEARANCES
For United States:  Christopher C. Caffarone, Esq.
                    James M. Miskiewicz, Esq.
                    United States Attorney's Office
                    Eastern District of New York
                    610 Federal Plaza
                    Central Islip, New York 11722

For Defendant
Jason Blair:        Leticia Maria Olivera, Esq.
                    Federal Defenders of New York, Inc.
                    One Pierrepont Plaza, 16th Floor
                    Brooklyn, New York 11201

SEYBERT, District Judge:

        Defendant Jason Blair ("Defendant") seeks a reduction of his sentence, pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i), in light of health concerns surrounding the COVID-19 pandemic and his medical history. (Def. Mot., D.E. 374; Def. Reply, D.E. 379.)  The Government opposes the motion. (Gov't Opp., D.E. 378.)  For the reasons set forth below, the motion is DENIED without prejudice to renew.

BACKGROUND

I.   Factual and Procedural History

Defendant was indicted on or around September 9, 2010 and has been detained since his arrest on September 15, 2010. (Presentence Report ("PSR") at 1; Indictment, D.E. 1; Min. Entry, D.E. 19 & 25.)  On March 7, 2012, the Government filed a Superseding Indictment (S-4) charging Defendant with attempted assault with a dangerous weapon (Count One); discharge of a firearm during a crime of violence (Count Two); conspiracy to commit extortion (Count Three); conspiracy to murder and assault with dangerous weapons Hell's Angels members and associates (Count Four); two counts of conspiracy to commit assault with dangerous weapons (Counts Eight and Fourteen); two counts of assault with dangerous weapons (Counts Nine and Thirteen); interstate transportation of a stolen motor vehicle (Count Eleven); two counts of unlawful use of firearms (Counts Fifteen and Eighteen); witness tampering (Count Sixteen); and three counts of felon in possession of a firearm (Counts Twenty through Twenty-Two).  (Superseding Indictment (S-4), D.E. 209.)  The charges arise out of Defendant's membership and roles as the "sergeant-at-arms" and president of the Long Island chapter of the Pagan's Outlaw Motorcycle Club, an enterprise engaged in racketeering activity, and his involvement in a plan to murder rival Hell's Angels members, among other

conduct on behalf of the Pagan's.  (Superseding Indictment (S-4) ¶¶ 1, 8, 11, 23.)

On May 25, 2012, Defendant pled guilty to discharge of a firearm during a crime of violence (Count Two) and conspiracy to murder and assault with dangerous weapons Hell's Angels members and associates (Count Four).  (Min. Entry, D.E. 222.)  Under a plea agreement, Defendant and the Government jointly agreed to recommend a sentence of 192 months' imprisonment.  (Plea Agmt., Ex. 1 to Gov't Opp., D.E. 378-1.)  Count Two carried a statutory minimum of ten years' (120 months) imprisonment to run consecutively.  (PSR ¶¶ 46, 101.)  With respect to Count Four, the advisory guidelines provided a range of 97 to 121 months' imprisonment.  (PSR ¶ 102.)  The PSR indicated that Defendant required surgery for small bowel resection on June 30, 2005 (PSR ¶ 74) and suffered from many health conditions that required "close medical monitoring" (PSR ¶ 112) including, as relevant here, Crohn's Disease (PSR ¶ 75), high blood pressure, heart disease and high cholesterol (PSR ¶ 76), and type II diabetes (PSR ¶¶ 76-77).

On October 5, 2012, the Court sentenced Defendant to a term of 192 months' (16 years) incarceration.  (Min. Entry, D.E. 266; Sent'g J., D.E. 267; Sent'g Tr., Ex. C to Def. Mot., D.E. 374-3, at 20:6-13 (imposing 84 months on Count Two and 108 months on Count Four, consecutively).)  At sentencing, the Government stated that for Count Two, it was "not in a position to prove a

discharge" of a firearm and Defendant should face a "mandatory seven-year sentence, 84 months, not the ten years that are laid out in the presentence report." (Sent'g Tr. at 6:3-14.)

II. <u>FCI Elkton</u>

Defendant is currently incarcerated at the Bureau of Prisons ("BOP") FCI Elkton in Lisbon, Ohio ("FCI Elkton"), a low security federal correctional institution. <u>See</u> https://www.bop.gov/locations/institutions/elk/ (last visited Sept. 24, 2020). As of the date of this Order, Defendant has been detained for ten years and has served nearly eight years of his sentence. Defendant is scheduled to be released on May 30, 2024. (Def. Mot. at 6 n.3.)

According to the information maintained by the BOP for FCI Elkton, as of September 24, 2020, 1 inmate and 2 staff members are listed as "positive" for COVID-19, 9 inmates have died from the virus, and 951 inmates and 52 staff members are listed as "recovered" from the virus.[1] <u>See</u> COVID-19 Cases, BOP, http://www.bop.gov/coronavirus/ (last visited Sept. 24, 2020). As

---

[1] In tracking the BOP website for FCI Elkton, the Court notes that as of September 13, 2020, <u>5 inmates</u> and 2 staff members were listed as "positive" for COVID-19, 9 inmates have died from the virus, and <u>961 inmates</u> and 52 staff members were listed as "recovered" from the virus. As of September 17, 2020, <u>no inmates</u> and 2 staff members were listed as "positive" for COVID-19, 9 inmates have died from the virus, and <u>957</u> inmates and 52 staff members are listed as "recovered." Because the website updates daily, these numbers are not reflected on the BOP website.

indicated by the Government and reflected by the BOP's COVID-19 statistics, "there is no question that FCI Elkton has been severely impacted by COVID-19." (Gov't Opp. at 14.)  Indeed, in April 2020, several inmates at FCI Elkton filed an emergency habeas class action petition in the Northern District of Ohio requesting release due to the spread of COVID-19 within the prison.  See Wilson v. Williams, No. 20-CV-0794 (N.D. Ohio).  The lawsuit was filed on behalf of all inmates at FCI Elkton, as well as a "Medically Vulnerable Subclass" consisting of persons of any age who experience, among other things, "serious heart conditions; . . . severe obesity (defined as a body mass index of 40 or higher); [and] diabetes."  Wilson v. Williams, No. 20-CV-0794, 2020 WL 1940882, at *3 (N.D. Ohio Apr. 22, 2020).  On April 22, 2020, the district court granted in part and denied in part the request for a preliminary injunction and ordered the respondents to identify "medically vulnerable subclass members" within one week and "to evaluate each subclass member's eligibility for transfer out of Elkton through any means, including but not limited to compassionate release, parole or community supervision, transfer furlough, or non-transfer furlough" within two weeks.  See generally id.

Defendant was named as "one of 837 inmates at FCI Elkton who are medically vulnerable to serious illness of death from COVID-19."  (Def. Mot. at 11; Gov't Opp. at 13; see Wilson v.

<u>Williams</u>, No. 20-CV-0794 (N.D. Ohio), D.E. 35-1, at ECF p. 12.)
On June 9, 2020, the Sixth Circuit vacated the preliminary
injunction on the ground that the petitioners were unlikely to
succeed on the merits. See <u>Wilson v. Williams</u>, 961 F.3d 829 (6th
Cir. 2020). The Sixth Circuit concluded that as of April 22, 2020,
the BOP had "responded reasonably to the known, serious risks posed
by COVID-19." <u>Id.</u> at 840.

III. <u>Defendant's Medical Conditions and the Current Motion</u>

Defendant is 46 years old and, as reflected in BOP
medical records, suffers from type II diabetes, obstructive sleep
apnea, obesity, hypertension, Raynaud's syndrome, esophageal
reflux, Crohn's disease, lower back pain, plantar fascial
fibromatosis, and sciatic nerve pain. (Def. Mot. at 12; BOP Recs.,
D.E. 376, at 1-2.) Defendant is prescribed many different
medications for these conditions. (Def. Mot. at 12; BOP Recs. at
6-9.) While incarcerated, Defendant has earned a GED, completed
a 2,000-hour apprenticeship program in computer equipment
operation, and received an award for his work with FCI Elkton's
UNICOR program. (Disciplinary & Programming Recs., D.E. 374-1.)
Defendant's records reflect one disciplinary infraction for
assaulting an inmate with a food tray in August 2016.
(Disciplinary & Programming Recs. at 3.)

Defendant, through counsel, filed his motion for
compassionate release on July 8, 2020, requesting that the Court

decrease his sentence to time-served, convert the unserved portion of his sentence to a term of supervised release, and modify the conditions of supervision as appropriate, including by ordering a term of home confinement.  (Def. Mot. at 6.)  Defendant also submitted letters from individuals attesting to his character, including a letter from Thomas Arundel, the Factory Manager for UNICOR at FCI Elkton.  (See Support Ltrs., D.E. 374-2, at 1.)  Mr. Arundel has employed Defendant for the past 5 years and wrote that Defendant is a "model inmate" and an "exceptional worker" who has "taken his rehabilitation extremely seriously."  (Id.)  Another letter, submitted by a former colleague with the Middle Island Volunteer Fire Department, states that upon release, he intends to "open [his] home with open arms" to Defendant.  (Support Ltrs. at 3.)

On September 8, 2020, Defendant requested review of his motion and advised that he was recently moved into a unit with 150 other inmates who will all be transferred by bus to another low security facility, either FCI Fort Dix in New Jersey or FCI Yazoo City Low in Mississippi.  (Def. Ltr., D.E. 380, at 1.)  Defendant states that (1) FCI Elkton staff will not implement "special precautions" to transport him despite his medical conditions (Def. Ltr. at 1) and (2) he is at a heightened risk to contract COVID-19 while in transit (Def. Ltr. at 1-2).  The Government responds that the BOP confirmed Defendant's transfer "to allow for more

social distancing within FCI Elkton." (Gov't Reply Ltr., D.E.
381.) The Government further reports that the BOP is following
CDC guidelines and that Defendant will be transported with the
medication or medical equipment he requires. (Id.)

DISCUSSION

I.   <u>Legal Standard</u>

        "'A court may not modify a term of imprisonment once it
has been imposed except pursuant to statute.'" <u>United States v.
Rabuffo</u>, No. 16-CR-0148, 2020 WL 2523053, at *1 (E.D.N.Y. May 14,
2020) (quoting <u>United States v. Gotti</u>, No. 04-CR-0743, 2020 WL
497987, at *1 (S.D.N.Y. Apr. 6, 2020)). As amended by the First
Step Act, 18 U.S.C. § 3582(c)(1)(A)(i) provides:

> The court may not modify a term of imprisonment once it
> has been imposed except that--in any case--the court, .
> . . upon motion of the defendant after the defendant has
> fully exhausted all administrative rights to appeal a
> failure of the Bureau of Prisons to bring a motion on
> the defendant's behalf or the lapse of 30 days from the
> receipt of such a request by the warden of the
> defendant's facility, whichever is earlier, may reduce
> the term of imprisonment (and may impose a term of
> probation or supervised release with or without
> conditions that does not exceed the unserved portion of
> the original term of imprisonment), after considering
> the factors set forth in section 3553(a) to the extent
> that they are applicable, if it finds that--
>
> (i) extraordinary and compelling reasons warrant such a
> reduction . . . and that such a reduction is consistent
> with applicable policy statements issued by the
> Sentencing Commission.

        A defendant seeking relief under Section 3582(c)(1)(A)
"bears the burden of showing that his release is justified."

8

United States v. Patterson, No. 06-CR-0080, 2020 WL 3451542, at *1 (S.D.N.Y. June 23, 2020); see also United States v. Fleming, No. 18-CR-0197, 2020 WL 2838511, at *2 (E.D.N.Y. June 1, 2020) ("It is [defendant's] burden to show that there are 'extraordinary and compelling reasons' that warrant a modification of his sentence.").

II.  Analysis

The parties agree that Defendant exhausted his administrative remedies. (Def. Mot. at 12; Gov't Opp. at 16.) Thus, the Court turns to the merits.

A. Extraordinary and Compelling Reasons

Defendant represents that he suffers from at least four "well-documented" chronic conditions: type II diabetes, obesity, hypertension, and heart disease, for which he takes many different medications. (Def. Mot. at 15; see discussion supra.) He argues that these conditions, coupled with the COVID-19 outbreak at FCI Elkton, "overwhelmingly establish 'extraordinary and compelling reasons' to grant" his motion. (Def. Mot. at 17.) While the Government does not "minimize the risk that COVID-19 presents to inmates like the [D]efendant, who have underlying medical conditions," it argues that Defendant's medical conditions "do not rise to the level identified in the Guidelines that would, by themselves, require release." (Gov't Opp. at 19-20.) The Government stresses that BOP implemented adequate measures to

prevent the spread of COVID-19 within FCI Elkton because "the BOP has not had any issues in dealing with the [D]efendant's conditions thus far," the conditions at FCI Elkton have vastly improved, and the the Northern District of Ohio is "closely monitoring and overseeing the conditions at FCI Elkton." (Gov't Opp. at 20-22.)

Extraordinary and compelling reasons for modification exist where "[t]he defendant is . . . suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 comment n.1(A)(ii). Compassionate release is generally limited to cases of serious illness or impairment, advanced age, or a need to care for a child, spouse, or registered partner. See id.; see also United States v. Traynor, No. 04-CR-0582, 2009 WL 368927, at *1 n.2 (E.D.N.Y. Feb. 13, 2009).

When presented with motions arising out of the COVID-19 pandemic, some courts hold that extraordinary and compelling reasons exist where a defendant's medical conditions fall within the high-risk category as defined by the Centers for Disease Control and Prevention ("CDC"). See, e.g., United States v. Zukerman, 16-CR-0194, 2020 WL 1659880, at *5 (S.D.N.Y. Apr. 3, 2020) (collecting cases); see also United States v. Serrano, No. 13-CR-0058, 2020 WL 5259571, at *3 (S.D.N.Y. Sept. 3, 2020).

Indeed, in some cases, the Government concedes the same.  See, e.g., United States v. Ramirez, No. 19-CR-0105, 2020 WL 4577492, at *2 (S.D.N.Y. Aug. 6, 2020) (the government did not dispute that defendant's health conditions (including diabetes, hypertension, elevated cholesterol, and morbid obesity) "constitute an extraordinary and compelling reason justifying release").  Other courts, however, find "that the mere possibility of contracting a communicable disease such as COVID-19, without any showing that the Bureau of Prisons will not or cannot guard against or treat such a disease, does not constitute an extraordinary or compelling reason for a sentence reduction under the statutory scheme."  See United States v. Quinones, No. 13-CR-0083, 2020 WL 4529365, at *5-6 (W.D.N.Y. Aug. 6, 2020) (emphasis in original) (collecting cases).

Here, Defendant, who is 46, does not fall into a high-risk age group for COVID-19 complications.  Older Adults, Coronavirus Disease 2019 (COVID-19), CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last updated Sept. 11, 2020).  He does, however, suffer from a number of underlying health conditions, such as type II diabetes, obesity, hypertension, and heart disease.  According to the CDC, individuals with type II diabetes, with serious heart conditions, and who are obese are at increased risk of severe illness from COVID-19, and those with

hypertension might be at an increased risk.  See People with
Certain Medical Conditions, Coronavirus Disease 2019 (COVID-19),
CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-
precautions/people-with-medical-conditions.html (last updated
Sept. 11, 2020).  It is true that "Defendant makes no specific
allegations that his medical needs have not been adequately
addressed at" FCI Elkton.  United States v. Chestnut, No. 12-CR-
0837, 2020 WL 5371021, at *2 (S.D.N.Y. Sept. 8, 2020).  However,
"not only is he at a higher risk of serious illness if he contracts
COVID-19 due to his underlying health conditions, but he is also
at a higher risk of contracting COVID-19 due to his incarceration."
United States v. Gross, No. 15-CR-0769, 2020 WL 1862251, at *3
(S.D.N.Y. Apr. 14, 2020) (emphasis in original).
"[R]ealistically, a high-risk inmate who contracts the virus while
in prison will face challenges in caring for himself."  United
States v. Butler, No. 19-CR-0834, 2020 WL 1689778, at *2 (S.D.N.Y.
Apr. 7, 2020).

     For these reasons, the Court agrees with the various
other courts that "have recently concluded that 'extraordinary and
compelling reasons' exist for purposes of the policy statement
where inmates suffer from medical conditions that place them at a
higher risk of serious illness in the event they contract COVID-
19."  Gross, 2020 WL 1862251, at *3 (citing Zukerman, 2020 WL
1659880, at *5); United States v. Escobar, No. 15-CR-0150, 2020 WL

4605213, at *4 (E.D.N.Y. Aug. 11, 2020) (finding defendant's type II diabetes, while well-controlled with medication, an "extraordinary and compelling reason to support his release."); cf. United States v. Alvarez, No. 89-CR-0229, 2020 WL 4904586, at *5 (E.D.N.Y. Aug. 20, 2020) (Seybert, J.) (finding defendant "unable to adequately prove the existence of extraordinary and compelling reasons" where, among other reasons, he did not suffer from underlying health conditions making at-risk).  Therefore, this factor favors Defendant's early release.

B. The 3553(a) Factors and Sentencing Commission Policy Statements

The Court next considers the Section 3553(a) factors and whether release is consistent with the Sentencing Commission's policy statements.  See 18 U.S.C. § 3582(c)(1)(A)(i).  The Court must determine whether "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."  U.S.S.G. § 1B1.13(2).  In this analysis, the Court considers "whether the offense is a crime of violence," "the weight of the evidence against the [defendant]," and "the nature and seriousness of the danger to any person or the community that would be posed by the [defendant's] release."  See 18 U.S.C. § 3142(g)(1)-(4).  The factors set forth in Sections 3553(a) and 3142(g) largely overlap and are therefore analyzed together.  See Sections 3142(g) and 3553(a).

The Court recognizes, as it did at sentencing, that Defendant has "some really good ingredients" (see Sent'g Tr. at 21:24-22:3) and is pleased that he has taken significant steps towards rehabilitation.  However, the Section 3553(a) factors largely weigh against release and the Court cannot conclude that he "is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2).  As outlined in the PSR, prior to his guilty plea and conviction, in 2003, Defendant was convicted in State court for second degree assault after he assaulted two individuals with a knife and blackjack.  (PSR ¶ 63.)  Later, Defendant became the sergeant-at-arms and the president of the Long Island Pagan's chapter.  (PSR ¶ 7.)  As a member of the organization, he committed violent acts and hatched a plot to murder Hell's Angels members, which served as a basis of his guilty plea (PSR ¶ 9).  An undercover agent recorded the plan that involved throwing a homemade grenade at a group of Hell's Angels as they rode their motorcycles during a motorcycle procession. (PSR ¶ 9); see United States v. Martinez, No. 12-CR-0862, 2020 WL 2079542, at *2 (S.D.N.Y. Apr. 30, 2020) ("When presented with motions for compassionate release due to COVID-19 brought by defendants with violent criminal histories, courts in this District have generally concluded that the Sentencing Commission's guidance cuts against granting release.").

14

Further, while two of the Section 3553(a) factors arguably favor an early release, "history and characteristics of the defendant," and "the need to provide the defendant with needed . . . medical care," they "are outweighed by the combined force of several other factors." United States v. Walter, No. 18-CR-0834, 2020 WL 1892063, at *3 (S.D.N.Y. Apr. 16, 2020) (citing Section 3553(a) factors: "the nature and circumstances of the offense" and "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law . . . to provide just punishment for the offense . . . to afford adequate deterrence to criminal conduct," and "to protect the public from further crimes of the defendant."). Indeed, [t]he nature and circumstances of his offense of conviction--to which he pleaded guilty--are serious." United States v. Asaro, No. 17-CR-0127, 2020 WL 1899221, at *7 (E.D.N.Y. Apr. 17, 2020). As a member and leader of the Pagan's, Defendant pled guilty to, and was convicted of, brandishing a firearm in relation to a crime of violence and conspiring to murder and assault rival gang members. (See discussion supra.) Therefore, the Court declines to reduce Defendant's sentence for the reasons stated at his sentencing, which are incorporated by reference herein, including that "[t]hese crimes are awful." (Sent'g Tr. at 19:12-13.) Moreover, granting Defendant's request for compassionate release, "when he is more than a year away from completing his carceral term, would

disserve these important § 3553(a) factors." Martinez, 2020 WL 2079542, at *3; United States v. Knight, No. 17-CR-0335, 2020 WL 4751490, at *2 (S.D.N.Y. Aug. 17, 2020) ("Though Defendant has served more than 70% of his anticipated term of imprisonment, considering his expected good time credit, his crime is serious and warrants him serving his full term of imprisonment."). The Court accordingly denies release at this time.[2]

CONCLUSION

For the reasons stated herein, Defendant's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (D.E. 374) is DENIED without prejudice to renew.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: September  24 , 2020
       Central Islip, New York

---

[2] To the extent not already pursued, Defendant may pursue relief in the form of a furlough under 18 U.S.C. § 3622 or home confinement as contemplated in the CARES Act, Pub. L. No. 116-136 (2020), and the Attorney General's April 3, 2020 memorandum to the BOP.  The decision to grant that relief, however, is reserved to the discretion of the BOP.